IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SAMANTHA ANNE S.,

              Plaintiff,

        v.                           Civil Action No.
                                   6:20-CV-0578 (DEP)

COMMISSIONER OF SOCIAL
   SECURITY,

              Defendant.

_____

APPEARANCES:                 OF COUNSEL:

FOR PLAINTIFF

CONBOY, McKAY, BACHMAN      PETER L. WALTON, ESQ.
  & KENDALL, LLP
407 Sherman Street
Watertown, NY 13601

FOR DEFENDANT

SOCIAL SECURITY ADMIN.       RAMI VANEGAS, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on August 31, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)     The Commissioner's determination that the plaintiff was not

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 2, 2021
            Syracuse, NY

3

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
SAMANTHA ANNE S.,

                          Plaintiff,

vs.                                6:20-CV-578

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on August 31, 2021, the

HONORABLE DAVID E. PEEBLES, United States

Magistrate Judge, Presiding.

                A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:         CONBOY, McKAY LAW FIRM
                       Attorneys at Law
                       407 Sherman Street
                       Watertown, New York  13601-9990
                         BY:  PETER L. WALTON, ESQ.

For Defendant:         SOCIAL SECURITY ADMINISTRATION
                       Office of General Counsel
                       J.F.K. Federal Building
                       Room 625
                       Boston, Massachusetts  02203
                         BY:  RAMI VANEGAS, ESQ.

                *Jodi L. Hibbard, RPR, CSR, CRR*
                *Official United States Court Reporter*
                     *100 South Clinton Street*
                   *Syracuse, New York  13261-7367*
                        *(315) 234-8547*

1                    (The Court and all counsel present by

2              telephone.)

3          THE COURT:  Let me begin by thanking counsel for

4    excellent presentations, I've enjoyed working with you and on

5    this case.

6          I have before me a challenge to the Commissioner's

7    adverse determination finding that plaintiff was not disabled

8    at the relevant times and therefore ineligible for the

9    benefits that she sought.  The challenge is brought pursuant

10   to 42 United States Code Section 405(g).

11         The background is as follows:  Plaintiff was born

12   in May of 1992 and is currently 29 years of age.  She was 23

13   years old on December 23, 2015, the alleged onset date of her

14   disability.  She stands five foot two inches in height and

15   has weighed between 160 and 189 pounds at various times.

16   Plaintiff lives in Lyons Falls with her boyfriend and four

17   children who, in February of 2019, were ages 8, 6, 5, and 2.

18   Plaintiff is a high school graduate and has an associate's

19   degree, a two-year degree in computer science.  While she was

20   in high school, she was in regular classes.  Plaintiff

21   drives.

22         Plaintiff stopped working on December 23, 2015 as a

23   result of a workplace injury resulting in her having to go to

24   the emergency room for treatment of back pain radiating into

25   her leg.  Reports of the visit are at 296 to 298 of the

1    administrative transcript.  At that time, and between

2    February of 2014 and the date of injury, plaintiff worked

3    three days per week for 12 hours each in a group home as a

4    residential counselor and aide.  It was a home where five

5    residents were placed.  She also worked from June of 2008 to

6    August of 2008 eight days per week -- I'm sorry, eight hours

7    a day four days per week in a supermarket.

8            Physically, plaintiff suffers from lumbar

9    degenerative disk disease, headaches, leg and foot numbness,

10   various neuropathies including peripheral neuropathy,

11   Charcot-Marie-Tooth neuropathy or disease, obesity, hand

12   issues, and she apparently may have undergone gallbladder

13   surgery in 2017 as well.  The Charcot-Marie-Tooth disease as

14   I understand it has nothing to do with teeth, but instead is

15   an inherited nerve problem causing abnormalities in the

16   nerves supplying feet, legs, hands, and arms and affecting

17   both motor and sensory nerves.

18           Plaintiff underwent decompression and fusion disk

19   surgery at L4-L5 on March 16, 2016, report of that surgery is

20   at 284 to 285 of the administrative transcript.  The surgery

21   was performed by Dr. Clifford Soults.

22           Plaintiff's back and other parts of her body that

23   have been affected over time have been the subject of various

24   tests.  Prior to surgery, on February 25, 2016, plaintiff

25   underwent magnetic resonance imaging, or MRI, testing.  The

1    result of that testing is at 565 of the administrative

2    transcript.  It is reported as grade 2 anterolisthesis of

3    L5-S1 with degenerative changes of the L5-S1 disk space in

4    association with right-sided neural foraminal stenosis with

5    suspected nerve impingement.  Left-sided neuroforaminal

6    narrowing is also noted to a lesser degree.

7          After surgery, she underwent MRI testing on

8    November 3, 2017.  A report of that testing is at 604 and 605

9    of the administrative transcript.  The impression from that

10   testing was intradiscal fusion L5-S1 with intradiscal spacer.

11   Canal and neural foramina are widely patent.  No focal disk

12   herniation seen.

13         MRI testing on May 28, 2019 was performed.  The

14   impression of that was postoperative changes at L5-S1, no

15   focal disk herniations or signs of stenosis.  Some prominent

16   edema between the posterior articular surfaces, most severe

17   at L3-L4.

18         There was a CT scan performed on February 24, 2017.

19   It was reviewed and a report of that review is at 494 of the

20   administrative transcript, which states, "Reviewed a CT scan

21   of the lumbar spine.  CT demonstrates good position of graft

22   and hardware.  There is some evidence of bony growth through

23   the cage and on the left side.  There is some foraminal

24   stenosis at L5-S1 on the left."

25         A CT scan was also performed again on June 6, 2019.

1   The report of that is at 24 and 25 of the administrative

2   transcript.  The impression from that testing was, "There has

3   been an L5-S1 fusion.  Persistent spondylolisthesis is less

4   marked than the previous study.  There has been a wide L5

5   laminectomy.  There is no significant thecal or nerve root

6   compression.  There is bilateral spondylolysis at L5.  Fusion

7   grafts have been placed at these levels and there appears to

8   be complete fusion of the left pars defect and possibly the

9   right."

10          As plaintiff's counsel noted, there was a nerve

11  conduction study performed on September 30, 2014.  It is

12  reported at 650 to 653 of the administrative transcript.  The

13  conclusion noted was demyelinating peripheral neuropathy

14  consistent with CMT.

15          The plaintiff underwent physical therapy, briefly,

16  beginning in January 13, 2016, but quit after claiming that

17  it aggravated her back.  She quit on or about February 1,

18  2016.  She was also discharged from her doctor's office

19  because she failed to follow through with physical therapy.

20          Plaintiff has seen Dr. John Leuenberger at South

21  Lewis Health Center from 2016, neurosurgeon Dr. Clifford

22  Soults, Dr. Lev Goldiner, Dr. Nathaniel Gould, and FNP David

23  Campola, all at Slocum-Dickson Medical Center.

24          Plaintiff has been prescribed various medications

25  including hydrocodone, Percocet, Duloxetine, gabapentin,

1    Fioricet, Prednisone, and tramadol.  She has also received

2    epidural steroid injections, SI joint injections, and facet

3    injections.

4          In terms of activities of daily living, plaintiff

5    is able to shower, she bathes three times a day, she can

6    dress, cook, do dishes, shop, watch television, listen to the

7    radio, read, she goes out, she cares for her children with

8    help, she plays bingo.  She never smoked.

9          Plaintiff procedurally applied for Title II

10   benefits on April 26, 2017 alleging an onset date of

11   December 23, 2015, and claiming disability based on a back

12   injury.  A hearing was conducted to address that application

13   on February 21, 2019 by Administrative Law Judge Michael

14   Burrichter.  The administrative law judge issued an

15   unfavorable decision on March 29, 2019, which became final

16   determination of the agency on April 30, 2020, when the

17   Appeals Council of the Social Security Commissioner denied

18   review.  It was noted that there was additional evidence

19   exhibited by the Appeals Council.  This action was commenced

20   on May 27, 2015 and is timely.

21         In his decision, the ALJ applied the familiar

22   five-step sequential test for determining disability.  He

23   first noted that plaintiff was insured through September 30,

24   2017.  He next found that plaintiff had not engaged in

25   substantial gainful activity between December 23, 2015 and

1    the date of last-insured status.

2         At step two, he found that plaintiff does suffer

3    from severe impairments that impose more than minimal

4    limitations on her ability to perform basic work functions,

5    including lumbar degenerative disk disease and spondylosis

6    status post fusion and decompression, Charcot-Marie-Tooth

7    neuropathy, peripheral neuropathy, and obesity, rejecting

8    various other conditions that were also claimed and are

9    listed primarily at page 34 of the administrative transcript.

10        At step three, the administrative law judge

11   concluded that plaintiff's conditions do not meet or

12   medically equal any of the listed presumptively disabling

13   conditions set forth in the Commissioner's regulations,

14   specifically considering Listings 1.02, 1.04, and 11.14.  He

15   also noted he had considered plaintiff's obesity pursuant to

16   Social Security Ruling 02-01p.

17        The administrative law judge next concluded that

18   plaintiff has the residual functional capacity, or RFC, to

19   perform sedentary work except that she can lift and carry up

20   to 10 pounds occasionally and lift or carry less than

21   10 pounds frequently, stand and/or walk for two hours out of

22   an eight-hour workday, and sit for six hours out of an

23   eight-hour workday.  He went on to conclude that claimant

24   should never climb ladders, ropes, and scaffolds, kneel,

25   crouch, and crawl and can occasionally climb ramps and

1    stairs, balance, and stoop.  The claimant can occasionally

2    use foot controls bilaterally, the claimant should never work

3    at unprotected heights, with moving mechanical parts, or

4    operate a motor vehicle, and can occasionally work in

5    vibration.

6              Applying that RFC finding, at step four the

7    administrative law judge concluded that plaintiff is not

8    capable of performing her past relevant work as a resident

9    aide, which was characterized as a medium exertional position

10   with an SVP of 6, according to the vocational expert who

11   testified at the hearing.

12             At step five, the administrative law judge first

13   noted that if plaintiff were capable of performing a full

14   range of sedentary work, a finding of no disability would be

15   directed by Medical-Vocational Guideline or Grid Rule 201.28.

16   Based on testimony of a vocational expert and the existence

17   of additional limitations that would shrink the job base upon

18   which the Grids are predicated, the vocational expert

19   testified and the administrative law judge found that

20   plaintiff is capable of performing available work in the

21   national economy and cited three representative positions

22   including document preparer, semiconductor bonder, and egg

23   processor, and therefore concluded that plaintiff was not

24   disabled at the relevant times.

25             As you know, the court's function is extremely

1   limited to determining whether correct legal principles were

2   applied and the resulting determination was supported by

3   substantial evidence which is defined as such admissible

4   evidence as a reasonable fact finder would conclude

5   sufficient to support a finding of fact.  The Second Circuit

6   in *Brault v. Social Security Administration Commissioner*, 683

7   F.3d 443 from 2012 noted that this is an extremely

8   deferential demanding standard, even more so than the clearly

9   erroneous standard that lawyers are familiar with.  The court

10   noted in *Brault* that once a fact is found, the fact can be

11   rejected only if a reasonable fact finder would have to

12   conclude otherwise.

13          In her brief, plaintiff raises three issues.  The

14   first is whether the administrative law judge substituted his

15   lay opinion for medical opinions and essentially played

16   doctor and interpreted raw medical data to support a

17   conclusion.

18          The second addresses the medical opinions in the

19   record and whether they were properly considered under the

20   new regulations, specifically focusing on the opinions of

21   Dr. Puri, which was essentially elevated over the medical

22   opinions from Dr. Leuenberger, plaintiff's treating source.

23          And thirdly, the argument is that the residual

24   functional capacity finding of the administrative law judge

25   is not supported.

1          As a backdrop, I note, as the administrative law

2     judge did, that we're dealing with a closed period from

3     December 13, 2015 to September 30, 2017.  I also note that it

4     is plaintiff's burden through step four, and including at the

5     residual functional capacity stage, to establish her

6     limitations based upon the conditions that she suffers from.

7     Of course pivotal to any determination of disability or no

8     disability is the finding of a residual functional capacity

9     which represents a range of the tasks the plaintiff is

10    capable of performing notwithstanding her impairments.

11    Ordinarily, an RFC represents a claimant's maximum ability to

12    perform sustained work activities in an ordinary setting at a

13    regular and continuing basis, meaning eight hours a day for

14    five days a week or an equivalent schedule.  And of course an

15    RFC determination is informed by consideration of all the

16    relevant medical and other evidence and must be supported by

17    substantial evidence.

18          I recited the residual functional capacity found by

19    the administrative law judge in this case.  It begins with

20    the finding of sedentary work which is defined by regulation,

21    and specifically 20 C.F.R. Section 404.1567(a), as involving

22    lifting no more than 10 pounds at a time and occasionally

23    lifting or carrying articles like docket files, ledgers, and

24    small tools.  Although a sedentary job is defined as one

25    which involves sitting, a certain amount of walking and

1    standing is often necessary in carrying out job duties.  Jobs

2    are sedentary if walking and standing are required

3    occasionally and other sedentary criteria are met.

4    Subsequent rulings, specifically SSR 96-9p, has clarified

5    that sedentary work generally involves periods of standing or

6    walking for no more than two hours of an eight-hour workday

7    and sitting up to a total of approximately six hours in a

8    similar period.

9              In this case, the administrative law judge

10   summarized the basis for his finding of the RFC, including at

11   the bottom of page 38 of the administrative transcript.  He

12   relied on the conservative treatment undergone by the

13   plaintiff, the fact that she quit physical therapy, limited

14   pain medications and injections, the medical evidence which

15   generally included normal physical exams after her surgery,

16   generally negative straight-leg raise findings, the fact that

17   many of the treatment notes reflect the gait and stance

18   generally normal.  He relied on the MRI and CT testing post

19   surgery, the fact that plaintiff did not require an assistive

20   device and that she was able to get on and off the

21   examination table.  He relied on Dr. Puri's medical source

22   statement, Dr. Gould's finding and Dr. Dickerson, although he

23   found that plaintiff was less limited than indicated in

24   Dr. Dickerson's opinion.  He also relied on Dr. Leuenberger

25   to a large degree although it's not entirely consistent with

1    the RFC, as plaintiff points out, and the Inertia residual

2    functional capacity testing and assessment that is in the

3    record.

4            The administrative law judge acknowledged that

5    there's some outliers and the court will acknowledge, as

6    plaintiff argues, that there are some discrepancies and there

7    are some findings that would support plaintiff's argument,

8    but the crux is whether substantial evidence supports the

9    residual functional capacity, even if it could be argued that

10   the medical evidence also would support a contrary finding.

11           I reiterate that I must overturn the result only if

12   a reasonable fact finder would have to conclude otherwise,

13   and I'm not able to make that finding.  I believe the

14   residual functional capacity is supported by substantial

15   evidence.

16           In terms of the medical evidence, obviously it is

17   governed by the new regulations which took effect in March of

18   2017 and are embodied in 20 C.F.R. Section 404.1520(c).  I

19   also note that under *Veino v. Barnhart*, 312 F.3d 578, Second

20   Circuit 2002, resolution of conflicts in medical opinions and

21   other evidence is entrusted to the administrative law judge

22   in the first instance.  I also note that while the argument

23   is raised that plaintiff -- the administrative law judge, by

24   plaintiff that the administrative law judge relied on raw

25   data, it is perfectly proper, and not only proper but

1    necessary for the administrative law judge, in weighing

2    opinion evidence, to review whether it is consistent with

3    other evidence in the record, including treatment notes,

4    clinical findings, and diagnostic tests.  There is a

5    distinction between doing that and interpreting raw data and

6    substituting an opinion for those of a medical source.  *Terri*

7    *G. v. Commissioner of Social Security*, 2019 WL 1318074 from

8    the Northern District of New York, March 22 of 2019.

9         In this case, I also note that there is no

10   requirement in the law or in the regulations that a residual

11   functional capacity finding mirror any one particular medical

12   opinion.  It may draw from many opinions and be supported if

13   it finds substantial evidence support.  In this case, I

14   interpret plaintiff's argument as asking the court to reweigh

15   the medical evidence, something that is not a function of the

16   reviewing court, as noted in *Terri G.*

17        The focus of the next argument is on the weight of

18   medical opinions.  I note there are many opinions in the

19   record and many, in part at least, are supportive of the

20   residual functional capacity finding.  There is an RFC

21   assessment from Raymond Alessandrini, OTR, from February 28,

22   2018 that appears at 579 to 583 of the administrative

23   transcript that was performed on February 28, 2018.  Among

24   other things, it notes that the plaintiff is capable of

25   assuming a position in the light strength category where the

1    maximum lifting capacity is 15 pounds and maximum carrying

2    capacity is 10 pounds.  He does note no walking at all, the

3    plaintiff should not walk, no pushing more than 20 pounds, no

4    pulling more than 30 pounds, no balancing activities that

5    require crouching, so forth.

6              The record also contains a consultative examination

7    report from Dr. Kautilya Puri from July 26, 2017, appears at

8    570 to 573 of the administrative transcript.  Based on her

9    examination, Dr. Puri notes, "No limitations to communication

10   and fine motor movements, moderate limitation to gross motor

11   movements of bilateral feet with mild to moderate limitations

12   to her gait and to her activities of daily living on

13   examination today with moderate limitations to squatting,

14   bending, stooping, and kneeling and marked limitations to

15   lifting weight."  The administrative law judge considered

16   that opinion and found it entitled, at page 39, to

17   significant weight, or finding it significantly persuasive.

18             Dr. Leuenberger -- I'm sorry, Dr. Nathaniel Gould

19   has issued opinions at various times including June 12, 2017,

20   that's at 618; July 17, 2017, 614; September 12, 2017, that's

21   at 613; September 22, 2017; January 10, 2018, and that's

22   at -- the last one is at 603; and February 8, 2018 at 584,

23   generally supportive of plaintiff's ability to perform the

24   exertional requirements of sedentary work.

25             Dr. Leuenberger, plaintiff's treating source,

1    issued an opinion on December 21, 2018, it's at 624 to 627

2    and it's consistent with the lifting requirements of the

3    residual functional capacity, but as plaintiff points out,

4    standing and walking is getting to be less than a half hour

5    in an eight-hour workday and sitting less than six hours in

6    an eight-hour workday.  The administrative law judge

7    addressed Dr. Leuenberger's opinions, there was an earlier

8    opinion reference on page 39 and this opinion on page 40, and

9    found to be partially persuasive.

10          The administrative law judge also considered the

11   opinion of state agency consultant Dr. R. Dickerson from

12   August 7, 2017, that found that, among other things,

13   significantly that plaintiff can stand and/or walk six hours

14   in an eight-hour workday and sit six hours in an eight-hour

15   workday, that's at page 82, and concluded that plaintiff is

16   capable of performing light work with some postural and

17   environmental limitations.  That was given weight although

18   the administrative law judge acknowledged that plaintiff was

19   more limited than Dr. Dickerson found.

20          I note that Dr. Leuenberger is a treating source

21   but under the new regulations, and specifically 20 C.F.R.

22   Section 404.1520(c), the treating source rule has been

23   abrogated.  Consideration of medical sources is governed by

24   20 C.F.R. Section 404.1513 defining medical opinions and in

25   1520(c) which requires consideration of five factors -- well,

1    I'm sorry, it lists five relevant factors, supportability,

2    consistency, relationship with the claimant, specialization,

3    and other factors.  It requires the ALJ to address

4    supportability and consistency, and the ALJ may, but does not

5    need to, address the other three factors.  So

6    Dr. Leuenberger's opinions are not entitled to controlling

7    weight any longer.

8            Under *Veino*, it is still for the ALJ to resolve

9    conflicts.  I suppose the decision could have been more

10   fulsome in addressing supportability and consistency, but

11   when I read the decision of the ALJ as a whole, I believe

12   that it is in there, and of course under the Second Circuit's

13   decision in *Estrella*, and I think this part still holds

14   weight even though it was decided under the former

15   regulations, when the formulaic regulations are not

16   specifically followed in rote fashion, if the court can,

17   after making a reaching review of the record, determine that

18   the regulations were followed in spirit at least, then there

19   is no basis to reverse and remand.  And I find that the

20   decision adequately addresses why Dr. Puri was given more

21   weight than Dr. Leuenberger and so I believe that there is no

22   error in that regard.

23           So in conclusion, I find substantial evidence

24   supports the RFC finding of the administrative law judge, the

25   Commissioner properly carried her burden at step five through

1    vocational expert testimony that was predicated on a

2    hypothetical that parallelled the RFC finding.  I will

3    therefore grant judgment on the pleadings to the defendant

4    and order dismissal of plaintiff's complaint.

5            Thank you both for excellent presentations, I hope

6    you enjoy the rest of your summer.

7            MR. WALTON:  Thank you, your Honor.

8            MS. VANEGAS:  Thank you, your Honor.

9                (Proceedings Adjourned, 1:46 p.m.)

1

2                    CERTIFICATE OF OFFICIAL REPORTER

3

4

5         I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

6    Official Realtime Court Reporter, in and for the

7    United States District Court for the Northern

8    District of New York, DO HEREBY CERTIFY that

9    pursuant to Section 753, Title 28, United States

10   Code, that the foregoing is a true and correct

11   transcript of the stenographically reported

12   proceedings held in the above-entitled matter and

13   that the transcript page format is in conformance

14   with the regulations of the Judicial Conference of

15   the United States.

16

17                        Dated this 1st day of September, 2021.

18

19

20                        /S/ JODI L. HIBBARD

21                        JODI L. HIBBARD, RPR, CRR, CSR
                          Official U.S. Court Reporter
22

23

24

25